UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PENNYMAC LOAN SERVICES, LLC | : | |
| Plaintiff, | : | |
| v. | : | Case No. 22-cv-____ |
| JEFFREY MORNEAU AND CONNOR & MORNEAU LLP | : | |
| Defendant. | : | |

## **COMPLAINT FOR MALPRACTICE AND INDEMNIFICATION**

1. Plaintiff PennyMac Loan Services, LLC ("PennyMac") brings this action against defendants Jeffrey Morneau ("Morneau") and Connor & Morneau LLP ("C&M;" collectively, with Morneau, "Defendants") for legal malpractice, breach of contract, common law indemnification, and contractual indemnification, for their failure to (1) properly disclose the terms of a mortgage loan to a borrower, (2) disclose a dual representation of that borrower and PennyMac's predecessor, (3) advise PennyMac's predecessor of their belief that a certain provision of the mortgage loan violated Massachusetts law or regulation, and (4) advise PennyMac's predecessor of a risk that certain provisions of the mortgage loan that Defendants closed for PennyMac's predecessor may conflict with Massachusetts law. As a result of Defendants' failures described below, PennyMac has incurred legal fees and costs, and may incur further damages, in excess of $75,000.

## **Parties**

2. PennyMac is a limited liability company organized under laws of the state of Delaware with a principal place of business in California.

1

129932480v.4

3. Morneau is an individual who, upon information and belief, resides in Massachusetts.

4. C&M is a limited liability partnership organized under the laws of the Commonwealth of Massachusetts with a place of business in Springfield, Massachusetts.

## Jurisdiction and Venue

5. This Court has jurisdiction pursuant 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because this action concerns title to real estate located within this venue.

## Facts

### Defendants' Obligations Under the 2019 Closing Instructions

7. On or about October 31, 2019 ("Closing Date"), Defendants represented Mortgage Network, Inc. ("MNI" or "Lender") as its attorney and settlement agent concerning a residential loan with a mortgage ("Mortgage") to be executed by Stephanie Lepsch ("Lepsch").

8. Among other provisions of the Mortgage, Paragraph 23 stated the following:

> **23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

9. The attorney/client relationship between Defendants and MNI was created and defined by a document called *Closing Instructions*, which is attached hereto as **Exhibit A**.

10. In the *Closing Instructions*, Defendants agreed to do the following:

    a. "be and remain responsible for informing Lender prior to closing of any state or local law or regulation or court order ruling either in effect as of the date of

      closing, or with such effective date which, in Closing Agent's professional opinion, will have an adverse effect on Lender's interest in connection with the Transaction." **Exhibit A** at 1.

    b. "review the [Closing Disclosure] and notify Lender if there are any inaccuracies." *Id.* at 6.

    c. "properly complete[]" the Mortgage document and "complete all blank spaces on various forms required for closing the Transaction in accordance with applicable state and federal law(s), rules and regulations." *Id.* at 8.

    d. "notify Lender immediately upon discovery of any incomplete or incorrect information on any Loan Documents." *Id.* at 9.

    e. "immediately contact Lender and postpone closing the loan until Closing Agent receives written permission to proceed from Lender if any ONE or MORE of the following circumstances is known by Closing Agent to exist during any stage of this transaction.: … 5. Parties to the Transaction. a. An employee of Closing Agent who handles the transaction has a conflict of interest."

11. In the *Closing Instructions*, Defendants "agree[d] to indemnify Lender for any losses resulting and related to [Defendants'] failure to follow these *Closing Instructions*." **Exhibit A** at 1.

12. In the *Closing Instructions*, Defendants "agree[] and understand[] that Lender may sell the loan in the secondary market and all of Lender's rights and privileges and obligations under these *Closing Instructions* inure to the benefit of Lender's successors and/or assigns." **Exhibit A** at 1.

13. On the Closing Date, Defendants represented Lepsch in addition to MNI, and had represented Ms. Lepsch for approximately 10 years prior to the Closing Date. See *Affidavit of Jeffrey S. Morneau* at ¶ 4, attached to *Opposition to Motion to Disqualify Counsel, Lepsch v. PennyMac Loan Services, LLC*, Mass. Super. Ct., Case No. 2179CV00213 (Aug. 21, 2022) at p. 37.

14. Defendants did not disclose the prior relationship with Lepsch to MNI and did not obtain MNI's consent to the dual representation at any time prior to accepting an engagement by MNI regarding the Mortgage.

15. Defendants did not disclose the prior relationship with Lepsch to MNI and did not obtain its consent to the dual representation at any time prior to the Closing Date.

16. On the Closing Date, and contrary to the express terms of Paragraph 23 of the Mortgage that Defendants were closing for MNI, Defendants believed that Lepsch was entitled to obtain a release of Mortgage and have that release recorded in the appropriate registry of deeds, without payment of any amounts beyond the principal and interest owed on the note, such as any "recordation costs" or any "fee for releasing the Security Instrument."

17. Specifically, Defendants have taken the position that Massachusetts law and/or regulation prohibits a lender from (1) charging a borrower any fee associated with recording a release of the mortgage and (2) charging a borrower for any fees associated with preparation of a release.

18. Defendants did not advise MNI that, in their professional opinion, any provision of the Mortgage, including Paragraph 23, conflicted with or held any risk of conflicting with any provision of Massachusetts law or regulation.

19. Defendants did not advise MNI that, in their professional opinion, Paragraph 23 of the Mortgage, which specifically provides that a borrower "shall" pay recording fees for any release conflicted with Massachusetts law or regulation.

20. Three weeks after the Closing Date, on November 21, 2019, PennyMac purchased the loan from Lender and became Lender's successor entitled to the rights and privileges of the *Closing Instructions*. See **Exhibit A** at p. 1.

21. Defendants' continued duties of loyalty and confidentiality that were originally owed to MNI as detailed in the *Closing Instructions* inured to the benefit of PennyMac after PennyMac purchased the Loan from Lender. See **Exhibit A** at p. 1.

22. PennyMac subsequently sold the Mortgage, but continued to perform mortgage loan servicing obligations as described in and authorized by Paragraph 19 of the Mortgage.

### *Payoff of 2019 Mortgage and Origination of 2020 Loan*

23. In or around December 2020, Defendants **represented MNI** in providing another loan to Lepsch to pay off the Mortgage serviced by PennyMac ("2020 Loan").

24. On December 3, 2020, Defendants, **on behalf of MNI, not Lepsch**, made a telephone call to PennyMac requesting a statement of the amounts required to pay off the Mortgage in full with a good through date of December 30, 2020.

25. On December 3, 2020, PennyMac sent a payoff statement ("Payoff Statement") to Defendants.

26. The Payoff Statement included a fee of $22.50 for Mortgage release costs and $105.00 for recording fees.

27. Between receiving the Payoff Statement on December 3, 2020, and December 31, 2020, neither Defendants, MNI, nor Lepsch questioned or protested any amount stated on the Payoff Statement.

28. Between receiving the Payoff Statement on December 3, 2020, and December 31, 2020, neither Defendants, MNI, nor Lepsch informed their client that their prior advice regarding Paragraph 23 had changed or was in error, and that requiring payment of such amount(s) would violate any Applicable Law and expose MNI and/or its successors to liability.

29. On or about December 31, 2020, Defendants, on behalf of MNI, sent a check made out to PennyMac along with a letter that stated the check "represent[ed] payment in full."

30. The letter that accompanied the check purporting to pay off the Mortgage in full, sent on behalf of MNI, also stated that the payment was being made "under protest," without stating who was protesting the payment or why.

31. Defendants did not advise MNI that they purported to pay off the Mortgage "under protest."

32. Defendants did not advise MNI that by notifying PennyMac that they were paying off the Mortgage "under protest" they were potentially endangering the 2020 Loan's first position lien priority.

33. After the Mortgage was paid off, PennyMac paid $22.50 to a third party to have the release prepared.

34. Once the release was prepared and executed, PennyMac paid $105.00 to the Hampden County Registry of Deeds to have the release recorded.

### *Defendants Turn Their Duties and Loyalties Against MNI and PennyMac*

35. After the Mortgage was paid off and after PennyMac had requested that a third party prepare and record the release—but before the release was actually recorded—Defendants immediately turned against their duties and loyalties to their client MNI and its successor PennyMac.

36. Defendants assisted and represented Lepsch in laying the groundwork and then bringing legal actions against PennyMac for claims that were substantially related to Defendants' advice and representation provided a mere 14 months earlier to MNI, which inured to the benefit of PennyMac.

37. On or about January 14, 2021, less than two weeks after sending funds to pay off the Mortgage and a day before the release was recorded with the Hampden County Registry of Deeds, Defendants, now representing Lepsch, sent a letter to PennyMac that purported to be a demand letter pursuant to Mass. Gen. Laws ch. 93A ("Chapter 93A Letter").

38. The Chapter 93A Letter asserted that charging the $22.50 costs for preparing a release and failing to disclose the release costs at the closing of the Mortgage violated Massachusetts law and regulations and was an unfair and deceptive act or practice in violation of Mass. Gen. Laws ch. 93A, § 2.

39. On February 1, 2021, Defendants, now representing Lepsch, filed an action ("First Complaint") in the U.S. District Court for the District of Massachusetts, alleging that PennyMac **violated** Massachusetts laws and regulations by charging Lepsch the $22.50 release cost and $105.00 recording fee in accordance with Paragraph 23 of the Mortgage. *See Lepsch v. PennyMac Loan Services, LLC*, Case No. 3:21-cv-30010-MGM.

40. On March 19, 2021, PennyMac filed a Motion to Dismiss the First Action.

41. On April 20, 2021, Defendants, representing Lepsch, voluntarily dismissed the First Action.

42. On April 29, 2021, Defendants, representing Lepsch, filed a second action ("Second Action") in Hampden County Superior Court against PennyMac, again alleging that PennyMac **violated** Massachusetts laws and regulations by charging the $22.50 release cost and $105.00 recording fee in accordance with Paragraph 23 of the Mortgage. *See Lepsch v. PennyMac Loan Services, LLC*, Mass. Super. Ct., Case No. 2179CV00213.

129932480v.4

## COUNT I – LEGAL MALPRACTICE

43. PennyMac incorporates herein by reference as if more fully set forth below the allegations set forth in paragraphs 1 through 42 above.

44. The attorney/client relationship between Defendants and MNI was created and defined by the *Closing Instructions*.

45. Defendants' professional advice, duties, loyalties of the attorney/client relationship between Defendants and MNI were among the "rights and privileges" created by the *Closing Instructions*, which Defendants "agree[d] and underst[ood]" would "inure to the benefit of Lender's successors and/or assigns." **Exhibit A** at 1.

46. PennyMac was Lender's successor entitled to the "rights and privileges" of the Closing Instructions, including the Defendants' professional advice, duties, loyalties of the attorney/client relationship.

47. Defendants owed a duty to MNI and, according to the *Closing Instructions*, to PennyMac, its successor, to exercise reasonable care and skill in handling the transaction for and on behalf of both MNI and its successor PennyMac.

48. Defendants failed to fulfill their aforementioned duty in one or more of the following ways:

    a. they failed to inform MNI prior to the closing of any Massachusetts law or regulation that could affect it or its successor's ability to charge Lepsch for the cost of preparing the release in accordance with Paragraph 23 of the Mortgage;

    b. they failed to inform MNI prior to the closing of any Massachusetts law or regulation that could affect it or its successor's ability to charge Lepsch for the cost of recording the release in accordance with Paragraph 23 of the Mortgage;

    c. they failed to inform MNI that, in their view, as alleged in both the First Action and the Second Action, Paragraph 23 of the Mortgage violated Massachusetts law or regulation because it provided that "Borrower shall pay any recordation costs;"

    d. they failed to disclose the requirements of Paragraph 23 of the Mortgage to Lepsch;

    e. they failed to disclose the expected costs for preparing and recording the release to Lepsch;

    f. they failed to disclose to and obtain written consent from MNI of Defendants' dual representation of MNI and Lepsch;

    g. they disclosed confidential communications with MNI to Lepsch; and

    h. they used information obtained in representation of MNI in claims raised by Lepsch against MNI's successor PennyMac.

49. As a direct and proximate cause of Defendants' failure to fulfill their duties, including, notably, that Defendants' assisted and represented Lepsch in sending the Chapter 93A Letter and filing both the First Action and the Second Action against MNI's successor PennyMac, PennyMac suffered losses in excess of $75,000.00, including the costs to defend the First Action, the costs to defend the Second Action, and any potential liability to Lepsch.

## COUNT II – BREACH OF CONTRACT

50. PennyMac incorporates herein by reference as if more fully set forth below the allegations set forth in paragraphs 1 through 49 above.

51. In the *Closing Instructions*, Defendants agreed to do the following:

    a. "be and remain responsible for informing Lender prior to closing of any state or local law or regulation or court order ruling either in effect as of the date of closing, or with such effective date which, in Closing Agent's professional opinion, will have an adverse effect on Lender's interest in connection with the Transaction." **Exhibit A** at 1.

    b. "review the [Closing Disclosure] and notify Lender if there are any inaccuracies." *Id.* at 6.

    c. "properly complete[]" the Mortgage document and "complete all blank spaces on various forms required for closing the Transaction in accordance with applicable state and federal law(s), rules and regulations." *Id.* at 8.

    d. "notify Lender immediately upon discovery of any incomplete or incorrect information on any Loan Documents." *Id.* at 9.

    e. "immediately contact Lender and postpone closing the loan until Closing Agent receives written permission to proceed from Lender if any ONE or MORE of the following circumstances is known by Closing Agent to exist during any stage of this transaction.: … 5. Parties to the Transaction. a. An employee of Closing Agent who handles the transaction has a conflict of interest."

52. Defendants failed to fulfill their aforementioned contractual duties in one of more of the following ways:

    a. they failed to inform MNI prior to the closing of any Massachusetts law or regulation that could affect it or its successor's ability to charge Lepsch for the costs of preparing the release in accordance with Paragraph 23 of the Mortgage;

    b. they failed to inform MNI prior to the closing of any Massachusetts law or regulation that could affect it or its successor's ability to charge Lepsch for the cost of recording the release in accordance with Paragraph 23 of the Mortgage;

    c. they failed to inform MNI that, in their view, as alleged in both the First Action and the Second Action, Paragraph 23 of the Mortgage violated Massachusetts law or regulation because it provided that "Borrower shall pay any recordation costs";

    d. they failed to disclose the requirements of Paragraph 23 of the Mortgage to Lepsch; and

    e. they failed to disclose to and obtain written consent from MNI of Defendants' dual representation of MNI and Lepsch.

53. Because Defendants "agree[] and understand[]" that MNI would sell the Mortgage, Defendants agreed that all "the rights and privileges" of the *Closing Instructions*, including the aforementioned duties, "inure to the benefit of" PennyMac. **Exhibit A** at 1.

54. As a direct and proximate cause of Defendants' failure to fulfill their contractual duties, including, notably, that Defendants' assisted and represented Lepsch in sending the Chapter 93A Letter and filing both the First Action and the Second Action against MNI's successor PennyMac, PennyMac suffered losses in excess of $75,000.00, including the

costs to defend the First Action, the costs to defend the Second Action, and any potential liability to Lepsch.

## COUNT III – COMMON LAW INDEMNIFICATION

55. PennyMac incorporates herein by reference as if more fully set forth below the allegations set forth in paragraphs 1 through 54 above.

56. Because Defendants' tortious conduct and breaches of the *Closing Instructions* described above caused PennyMac to suffer losses, Defendants owe a common law duty to indemnify PennyMac for its losses caused by Defendants.

57. As a direct and proximate result of Defendants' violations of their duties, PennyMac suffered and continues to suffer damages in excess of $75,000 including the costs of defending the First Action and the Second Action and potential liability to Lepsch, if any.

## COUNT IV – CONTRACTUAL INDEMNIFICATION

58. PennyMac incorporates herein by reference as if more fully set forth below the allegations set forth in paragraphs 1 through 57 above.

59. In the *Closing Instructions*, Defendants "agree[d] to indemnify Lender for any losses resulting and related to [Defendants'] failure to follow these *Closing Instructions*." **Exhibit A** at 1.

60. Because Defendants "agrees and understands" that MNI would sell the Mortgage, Defendants agreed that all the "rights and privileges" of the *Closing Instructions*, including the right of indemnification, "inure to the benefit of" PennyMac. *Id.*

61. Because Defendants' failure to follow the *Closing Instructions* as described herein caused PennyMac to suffer losses, Defendants owe a contractual duty to indemnify PennyMac for its losses.

11

62. As a direct and proximate result of Defendants' breaches of the *Closing Instructions*, PennyMac suffered and continues to suffer damages in excess of $75,000 including the costs of defending the First Action and the Second Action and potential liability to Lepsch, if any.

WHEREFORE, PennyMac prays for relief herein as follows:

1. A judgment declaring that Defendants owe PennyMac a duty to indemnify it for any losses, including attorney's fees, sustained in defending against the First Action and the Second Action and any liability to Lepsch;

2. Compensatory Damages;

3. Attorney Fees for this action;

4. Costs of this action; and

5. Such other and further relief which the Court deems just and proper under the circumstances.

PENNYMAC LOAN SERVICES, LLC
By its Attorney,

*/s/ Krystle G. Tadesse*
Joseph A. Farside, Jr. (BBO #667187)
Krystle G. Tadesse (BBO #673899)
Jeffrey C. Ankrom (BBO #704349)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903-2499
401.274.9200
401.276.6611 (fax)
joseph.farside@lockelord.com
krystle.tadesse@lockelord.com
jeffrey.ankrom@lockelord.com

Date: October 18, 2022

129932480v.4