UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PENNYMAC LOAN SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY MORNEAU and <br> CONNOR & MORNEAU LLP, <br><br> Defendants. | Civil Action No. 22-30133-MGM |

MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION
REGARDING DEFENDANTS' MOTION TO DISMISS
(Dkt. Nos. 11 & 26)

August 21, 2023

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

In October of 2019, Attorney Jeffrey Morneau, acting through Morneau and Connor, LLP (together "Defendants"), represented Mortgage Network, Inc. (MNI) in connection with the closing of a residential mortgage securing a loan to Stephanie Lepsch ("2019 Mortgage"). The 2019 Mortgage was later transferred to Plaintiff. The following year, Lepsch obtained another loan from MNI secured by a second mortgage ("2020 Mortgage") and planned to use the second loan to pay off the 2019 Mortgage. Defendants, once again, represented MNI during the closing of the 2020 Mortgage. Prior to the 2020 Mortgage closing, Defendants obtained a Payoff Statement for the 2019 Mortgage from Plaintiff, in its capacity as servicer of the 2019 Mortgage. The Payoff Statement included a $22.50 charge for the preparation of a release and a $105 charge for recording the mortgage discharge. The discharge-related provisions of the 2019 Mortgage stated that certain

1

charges might be assessed, and Plaintiff routinely includes such charges in connection with the pay-off and release of residential mortgages it services.

Approximately two weeks after Defendants sent Plaintiff the funds to pay off the 2019 Mortgage, Defendants, acting on behalf of Lepsch, sent a Chapter 93A demand letter to Plaintiff. In that letter, Defendants asserted that Plaintiff's inclusion of the $22.50 charge on the Payoff Statement violated Massachusetts laws and regulations. Defendants later initiated litigation against Plaintiff on behalf of Lepsch. That action, currently pending in Hampden County Superior Court, alleges that Plaintiff violated Massachusetts laws and regulations by including both the $22.50 and $105.00 charges on the Payoff Statement for the 2019 Mortgage. Plaintiff takes the position in that litigation, and in this case, that both charges and the related language in the 2019 Mortgage were entirely proper.

Plaintiff initiated this action in October 2022, alleging Defendants breached professional and contractual duties owed to Plaintiff, in its capacity as a successor-in-interest to MNI. (Dkt. No. 1.) Specifically, Plaintiff asserts Defendants' duties to MNI required them to notify MNI prior to the 2019 Closing that Attorney Morneau (1) held the professional opinion that Massachusetts laws and regulations do not permit the type of discharge-related charges referenced in the 2019 Mortgage and regularly assessed by Plaintiff and (2) simultaneously represented Lepsch. Defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing the facts alleged by Plaintiff are insufficient to support its claims. (Dkt. No. 11.) Plaintiff opposed and this court referred the motion to Magistrate Judge Paul D. Levenson for a Report and Recommendation ("R&R").

In his R&R, Judge Levenson agreed with Plaintiff as to certain points, but ultimately recommended the court grant Defendants' Motion to Dismiss for Failure to State a Claim. (Dkt. No. 26.) He explained why Plaintiff's claim for common law indemnification (Count III) cannot

succeed and recommended the court dismiss that claim with prejudice. Plaintiff has not objected to that recommendation and, following *de novo* review, the court adopts that recommendation for the same reasons explained in the R&R.

Judge Levenson also assessed Plaintiff's claims for legal malpractice (Count I), breach of contract (Count II), and contractual indemnification (Count IV). He recommended the court dismiss all three claims because Plaintiff had not included sufficient factual allegations in its complaint to support a plausible inference that Defendants' alleged breaches were the proximate cause of Plaintiff's alleged injuries. Observing that Plaintiff might be able to allege the facts necessary to shift the claims from possible to plausible, Judge Levenson recommended the court dismiss those claims without prejudice. Plaintiff timely filed objections to that recommendation. For the reasons that follow, the court adopts Judge Levenson's recommendation and dismisses Counts I, II, and IV without prejudice.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Under the two-step analysis for determining plausibility, the court must first "separate facts from conclusory allegations" and then decide whether "the factual allegations that remain" support "a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Parker v. Landry*, 953 F.3d 9, 14 (1st Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678-79)). "The allegations cannot be 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'"

3

*Id.* (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*)). When assessing the sufficiency of the factual allegations, the court may consider whether important information missing from a plaintiff's complaint is likely to be within a defendant's control and obtainable through modest discovery. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). "Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Lemelson v. U.S. Bank Nat'l Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013) (internal quotation marks omitted).

Defendants relied on three arguments to support their motion to dismiss as to Counts I, II, and IV. First, they argued that any duties Defendants owed pursuant to the Closing Instructions did not extend to the type of loan servicing activities targeted in the state court litigation. Second, Defendants asserted Plaintiff's claim for contractual indemnification is premature because no claim accrues until Plaintiff, as the contractual indemnitee, pays damages to an injured party. Third, they asserted Plaintiff failed to allege facts that plausibly suggest the alleged malpractice was the proximate cause of Plaintiff's injuries.

Judge Levenson was not persuaded by the first argument. He observed that both the duties generally owed by closing attorneys and the specific language in the Closing Instructions provide that the closing attorney would remain responsible for harms that flow from mistakes made while completing the engagement, even after the engagement has ended. (R&R at 16.) Plaintiff, understandably, has not objected to that portion of the R&R and this court agrees that the Closing Instructions expressly provided that Morneau's responsibility for any breach of the duties he owed MNI continued after the closing and extended to MNI's successors. Judge Levenson also rejected Defendants' argument that the contractual indemnification claim was untimely. He succinctly, and correctly, observed that the First Circuit has ruled that Massachusetts law does not preclude an

4

indemnitee from recovering attorney's fees paid to defend against a suit brought by the indemnitor. (R&R at 31-32, citing *Caldwell Tanks, Inc. v. Haley & Ward, Inc.*, 471 F.3d 210, 219 (1st Cir. 2006)).

This brings the court to Defendants' causation argument. Though Defendants focused on Plaintiff's malpractice claim, Judge Levenson considered the issue more broadly. He observed significant overlap between Plaintiff's claims for legal malpractice (Count I) and breach of contract (Count II) and analyzed the claims together. This court takes the same approach for the same reasons.[1] He also observed that Plaintiff's contractual indemnification claim (Count IV) is limited, by the terms of the Closing Instructions, to losses that are "resulting and related to" Defendants' breaches of those instructions. Thus, at their core, the three claims all require Plaintiff to prove Defendants breached duties they owed to MNI under the 2019 engagement and that those breaches were the proximate cause of the injuries suffered by Plaintiff. Defendants remained responsible for harms flowing from their actions during the 2019 Closing, but they did not owe Plaintiff any additional duties in 2020, when the state court litigation was filed.

As a result, Plaintiff's claims require more than allegations that Defendants breached their obligations to MNI, that Plaintiff was a successor to MNI as to those obligations, and Defendants filed the state court litigation in 2020. These allegations only suffice to establish the <u>possibility</u> that the alleged breaches caused the alleged injuries. For its claims to be <u>plausible</u>, Plaintiff must also allege facts that demonstrate, or from which it can be reasonably inferred, that one or more of Defendants' alleged breaches was a proximate cause of Plaintiff's injuries. *See Kiribati Seafood Co., LLC v. Dechert LLP*, 83 N.E.3d 798, 805 (Mass. 2017) (listing the four elements for a legal

---

[1] Plaintiff objected to language in the R&R describing the claims as "largely duplicative," apparently concerned that language could prevent it from pursuing the breach of contract claim, for which there is a six-year statute of limitation, after the shorter, three-year statute of limitations has run on the legal malpractice claim. The court does not foreclose Plaintiff from later pursuing the breach of contract claim separately from the legal malpractice claim simply by analyzing the claims together for purposes of Defendants' motion to dismiss.

malpractice claim as (1) an attorney-client relationship in a matter, (2) a failure by the attorney to exercise reasonable care and skill in the matter, (3) a loss incurred by the client, and (4) that the proximate cause of the of the loss was the attorney's negligence). Or, framed in a more practical manner, the factual allegations must plausibly demonstrate that Plaintiff would not have been injured if Defendants had not breached their duties to MNI.

Judge Levenson found Plaintiff's Complaint lacked the factual allegations necessary to connect the dots on causation, and this court agrees. The Complaint lacks factual allegations about how MNI would have responded had Defendants provided notice of Morneau's professional beliefs about mortgage discharge fees or his simultaneous representation of Lepsch. There is no factual basis from which the court can reasonably infer that MNI would have altered the language of the mortgage if notified of Morneau's opinions because Plaintiff has taken the position that Morneau's professional opinions are incorrect and the mortgage provisions were all lawful. Nor are there factual allegations about other steps MNI might have taken, how (or even if) MNI would have communicated related information to Plaintiff, and what (if anything) Plaintiff would have done differently had it received that information from MNI. Similarly, the complaint offers no clue about how MNI would have responded if Morneau had disclosed that he also represented Lepsch. Without factual allegations describing what probably would have happened had the disclosures been made, this court can only speculate and, while guesses unsupported by factual allegations can suggest conceivable theories, they do not suffice to identify plausible ones. This is especially true here, where the missing facts are not within Defendants' control. *See García-Catalán*, 734 F.3d at 104.

Plaintiff protests that this approach improperly assesses "causation in the context of an alternate reality." (Dkt. No. 29, Pl. Obj. to R&R, 4-5.) However, determining proximate cause will usually require the court to consider not only what happened, but also what probably would have happened had the alleged breach not occurred. *Kiribati Seafood Co., LLC*, 83 N.E.3d at 805 (stating

6

that to satisfy the proximate cause element in a legal malpractice claim, "a client must demonstrate that it 'probably would have obtained a better result had the attorney exercised adequate skill and care.'" (quoting *Global NAPs, Inc. v. Awiszus*, 930 N.E.2d 1262, 1271-72 (Mass. 2010))). A plausible claim must, therefore, be grounded in factual allegations that, if proved, would demonstrate that in the absence of the alleged breach Plaintiff probably would not have been injured. Since Plaintiff's complaint lacks such allegations, it fails to "to state a claim upon which relief can be granted" and must be dismissed. Fed. R. Civ. P. 12(b)(6). The court agrees with Judge Levenson, that at the time of his analysis and for the reasons he stated, dismissal without prejudice was appropriate.

### III. CONCLUSION

In conclusion, based upon the thorough analysis presented in the R&R, the court, upon *de novo* review, hereby ADOPTS the Report and Recommendation (Dkt. No. 26) and GRANTS Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. No. 11), with prejudice as to Count III and without prejudice as to Counts I, II, and IV.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge